In the early part of the year 1947 plaintiff, Tommy Commardo, operated an automobile repair shop in New Orleans, doing business as Jiffy Repair Shop. At that time defendant, Perry Clingan, owned a 1936 model Ford Convertible automobile, which was in need of various mechanical repairs. He contracted with Commardo for the necessary work and a little later also contracted with him for making necessary repairs to the top of the car. Commardo, through his shop, made the repairs, and brought this suit against Clingan for $260.00, alleging that by contract he was to receive this amount for the work; that the said work had been done in a satisfactory manner and that he had not been paid.
Clingan answered, admitting that he had employed Commardo to do the work, but averring that the total contract price was $215.00 and that he had paid on account $100.00, leaving a balance of only $115.00 and that he had offered this amount to Commardo, who had refused it.
There was judgment in the First City Court of New Orleans in favor of Commardo for $115.00 only, with interest from judicial demand and for costs. Commardo has appealed.
There seems to be no question that the work was done satisfactorily. Consequently, the only issues are, first, whether the contract price was $215.00, as contended by defendant, or $260.00, as maintained by plaintiff; and second, whether defendant paid $100.00 on account.
The burden of showing that he made payment was on Clingan, the defendant. And he produced neither cancelled check nor receipt. He says that he did not make the payment by check, but that he paid to Commardo $100.00 in cash "mostly in ten dollar ($10.00) bills." He says that in order to get this money he made a loan at a "finance" company which had already made a loan on the automobile and that all that the company would let him have was $100.00; that on the very day on which he made this loan, he returned to his place of business, which was immediately in front of the repair shop of Commardo, and late in the evening made the payment to Commardo and that Commardo had already closed his place of business *Page 678 
and said that he did not want to return to it to obtain a receipt but that he would give him a receipt the next day.
Feeling that it might be advisable to produce corroboration of this testimony, defendant placed on the witness stand Fred Thiemann, who is very certain that he saw Clingan pay to Commardo $100.00 and that the payment was made in ten dollar bills and that at that time Commardo said to Clingan: "this leaves a balance of 115.00."
Thiemann says that: "* * * I reprimanded Perry for not receiving a receipt * * *."
There are several features of this conversation which throw grave suspicion on its veracity. In the first place, though Clingan was absolutely certain that he had made the payment late in the evening, Thiemann says that it was at about six o'clock in the morning. In the second place, Thiemann says that at the time he reprimanded Clingan for not insisting on a receipt and yet a little later in his testimony he says that it was two or three days later that he asked Clingan: "* * * Did you receive a receipt"? and Clingan answered, "no".
We are convinced from the inconsistencies in the testimony of Clingan and Thiemann that no such payment was actually made. There is other evidence on incidental unimportant matters to which we attribute little importance.
Clingan produced as a witness, J. W. Wallace, who was his father-in-law. Wallace says that on one occasion he overheard parts of a conversation between Clingan and Commardo and that he could hear, through a little window in a wall which separated him from the others, Commardo say that Clingan could have his car "when you pay $115.00". That is all that he heard of the conversation.
Commardo says that the price agreed upon was $190.00 for the mechanical repairs and later $70.00 for the repairs to the top was agreed upon and he produced evidence which tends to show that those prices would have been about proper. This would make a total of $260.00, and he says that positively no payment was made on account, but that as a matter of fact the finance company instead of lending any additional money to Clingan had indicated an intention of seizing the automobile under the chattel mortgage which it then held on it and that he, Commardo, had prevented this by guaranteeing the obligation of Clingan.
Our conclusion is that Clingan has completely failed to show that he made any payment on account. Since we find his testimony untrue on that issue, we have no difficulty in concluding that it is also untrue on the issue concerning the contract price.
We realize that on these questions of fact the trial court found with the plaintiff, but we think we detect manifest error.
Counsel for plaintiff calls attention to what he asserts was an erroneous ruling of the judge a quo in excluding certain evidence which counsel sought to introduce and which he says would have thrown suspicion upon the testimony of some of defendant's witnesses. These witnesses, when placed on the stand by counsel for defendant, had given evidence damaging to some extent to plaintiff and, on cross-examination, had not been interrogated by counsel for plaintiff on the question of whether they were, for any reason, biased against plaintiff. Nor had any other evidence been offered on the question of possible bias of these witnesses. Later counsel for defendant placed defendant again on the stand to rebut certain testimony, and when defendant was then turned over to counsel for plaintiff for cross-examination, he was asked whether there had not been certain specific occurrences which had prejudiced these other witnesses against plaintiff. This new line of testimony was objected to by counsel for defendant and the objection was sustained. Counsel for plaintiff says that this objection should have been overruled and that he should have been permitted to cross-examine the defendant on the question of the possible bias of those other witnesses.
It seems to be the opinion of the various textwriters that the bias of a hostile witness may be shown on rebuttal, even though until that time there had been no evidence at all on the subject. Mr. Wigmore, *Page 679 
in his work on Evidence, second edition, vol. IV, page 25, section 1873, says that the trial court has discretion to determine "what is properly rebutting evidence," and that ordinarily the Court's determination in this regard "should be respected". But Mr. Wigmore adds that in some instances the admissibility of certain evidence on rebuttal is clear, and that in these instances "the proponent does not need the trial Court's express consent to admit it * * *." Then Mr. Wigmore states: "This will always be the case for evidence offered to impeach the opponent's witnesses by way of moral character, bias, self-contradiction, or the like. * * *"
However, it need not be decided by us now that this evidence should have been admitted, because even without it we have concluded, as we have already stated, that the record as it now stands convinces us beyond any doubt of the truth of plaintiff's version of the controversy.
The judgment appealed from is amended by the increase of the amount awarded to $260.00. As thus amended, the judgment is affirmed; defendant to pay all costs.
Amended and affirmed.